IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| STEVEN M. WIRTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:12-cv-0375 |
| | ) | Judge Trauger |
| LES MONDELLI, et al., | ) | Magistrate Judge Brown |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Pending before the court is the Magistrate Judge's August 7, 2012 Report and Recommendation ("R&R") (Docket No. 31), which recommended that the defendants' Motion to Dismiss Based, in Part, on Qualified Immunity (Docket No. 18) be granted. The plaintiff, Steven M. Wirth, proceeding *pro se*, has filed objections to the R&R (Docket No. 43), to which defendants Les Mondelli and Kenneth Connell have responded (Docket No. 44), and the plaintiff has filed a reply (Docket No. 47). The defendants have also filed objections to the R&R (Docket No. 36), to which the plaintiff has responded (Docket Nos. 43 and 47.)

## BACKGROUND

The plaintiff has brought this action under 42 U.S.C. § 1983, alleging that his Fourth Amendment constitutional rights were violated as a result of the defendants' conduct. The defendants, Les Mondelli and Kenneth Connell are employees of the Probation Department for

1

the Metropolitan General Sessions Court of Nashville-Davidson County.[1] Defendant Mondelli is alleged to be the Director of the Probation Department, while defendant Connell is alleged to be the department's Electronic Monitoring Supervisor.

According to the Complaint, the alleged deprivations of the plaintiff's constitutional rights occurred after he was released on bond on April 25, 2011. As a condition of his bond, the plaintiff was required to report to defendant Connell for drug testing twice a week. Accordingly, the day after his release, the plaintiff reported to defendant Connell, who took a urine sample from the plaintiff that tested positive for the presence of marijuana.

On May 4, 2011, the plaintiff again reported to defendant Connell to submit to another drug and alcohol test. After waiting for approximately two hours to take the test, the plaintiff asked a receptionist working at the Probation Department for help. After learning of this request for assistance, defendant Connell is alleged to have informed defendant Mondelli that the plaintiff was complaining about how long it was taking to submit to the test. Defendant Mondelli then became verbally abusive toward the plaintiff, accused him of smelling of alcohol, and demanded that the plaintiff take a breathalyser test using a previously opened tube. After smelling the odor of alcohol on the tube, the plaintiff asked that a new tube be opened in his presence. Upon receiving more verbal abuse from defendant Mondelli, the plaintiff

---

[1] Unless otherwise noted, the factual allegations are drawn from the plaintiff's Complaint and the exhibits attached thereto (Docket No. 1). The court may consider such exhibits in ruling on the pending motion to dismiss. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (noting that "exhibits attached to the complaint" may be considered when reviewing a Rule 12(b)(6) motion to dismiss) (internal quotation marks omitted). Moreover, the defendants have raised no objections to the exhibits attached to the plaintiff's Complaint.

subsequently submitted to the breathalyser using an unopened tube and tested negative for the presence of alcohol.

Upon completing the breathalyser test, defendant Connell collected a urine sample from the plaintiff.[2] This sample tested positive for the presence of marijuana and opiates. The level of marijuana detected in this sample exceeded the levels found after the plaintiff's April 26, 2011 drug test. The plaintiff alleges that, at this time, he was taking a prescribed cough suppressant containing codeine (an opiate) to treat pneumonia.

On May 5, 2011, defendant Connell submitted an affidavit seeking the plaintiff's arrest. The affidavit noted that the plaintiff violated the conditions of his bond by testing positive for marijuana on May 4, 2011. However, the affidavit omitted the fact that the plaintiff had previously tested positive for marijuana on April 26, 2011. It also failed to mention the plaintiff's positive test for opiates or provide any discussion of whether the opiates affected the plaintiff's THC levels. Based on defendant Connell's affidavit, which was approved by defendant Mondelli, a General Sessions judge issued a warrant for the plaintiff's arrest. The plaintiff was subsequently arrested and detained on May 6, 2011.

While detained on the aforementioned warrant, medical staff ordered the plaintiff to be quarantined, due to a false report stating that he had tested positive for tuberculosis. As a result, the plaintiff was prohibited from attending court appearances. Following the passage of more than 15 days, the plaintiff was removed from quarantine after it was confirmed that he was

---

[2] According to the Complaint, while the plaintiff was waiting in the hallway to speak with defendant Mondelli after providing this sample, he observed a bottle of rubbing alcohol next to what he perceived was a breathalyser tube wrapper.

suffering from pneumonia, rather than tuberculosis. The plaintiff was released from custody on May 25, 2011, after he pled guilty to driving under the influence. He was sentenced to serve 48 hours and was credited with time served.

The plaintiff commenced this action on April 11, 2012. (Docket No. 1.) In his Complaint, the plaintiff alleges that the defendants intentionally, or with reckless disregard for the truth, omitted material facts from the May 5, 2011 affidavit in an effort to create the impression that he used marijuana while on bond. (*Id.* at 6-7.) Specifically, the plaintiff alleges that the defendants omitted the following material facts: (1) his April 26, 2011 positive drug test result for marijuana; (2) his May 4, 2011 positive drug test result for opiates; and (3) any discussion of whether his prescribed cough medication affected his THC levels.[3] (*Id.* at 5.) He alleges that this conduct violated the Fourth Amendment to the U.S. Constitution because, had the omitted facts been known to the General Sessions judge, the judge would have found probable cause lacking to issue a warrant for the plaintiff's arrest.[4] (*Id.* at 6-7.) The plaintiff seeks compensatory and punitive damages for this alleged deprivation of his civil rights. (*Id.* at 8-9.)

The defendants filed their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on May 21, 2012. (Docket No. 18.) They argued, among other things, that they were

---

[3] In his Amended Objections, the plaintiff, relying on his own declaration attached to his opposition to the motion to dismiss, also alleges that the defendants failed to disclose the fact that he had lost a significant amount of weight as a result of his pneumonia. (Docket No. 43 at 13.) Citing two research articles, he argues that sudden weight loss can promote increased levels of THC in the blood. (Docket No. 43 at 11 n.4, 14.)

[4] The plaintiff initially claimed that the defendants' conduct also violated his rights under the Fourteenth Amendment, but he has since withdrawn that claim. (*See* Docket No. 47 at 11.)

4

entitled to quasi-judicial immunity. (Docket No. 19 at 2.) After the plaintiff filed his response to that motion, the defendants moved to strike three declarations attached to the plaintiff's opposition brief. (Docket No. 28.)

In the R&R, the Magistrate Judge effectively granted in part and denied in part the defendants' Motion to Strike.[5] (Docket No. 31 at 5.) Turning to the defendants' Motion to Dismiss, the Magistrate Judge concluded that the defendants were immune from suit under the doctrine of quasi-judicial immunity. (Docket No. 31 at 6-7.) Having reached this determination, the Magistrate Judge declined to analyze the remaining arguments forwarded by the defendants in support of their Motion to Dismiss, including their assertion of qualified immunity. (*Id.* at 7.) The Magistrate Judge thus recommended that the defendants' Motion to Dismiss be granted and that the plaintiff's claims be dismissed. (*Id.*)

On August 15, 2012, the plaintiff filed his specific objections to the R&R. (Docket No. 34.) He later withdrew these objections and filed amended objections on October 26, 2012. (Docket No. 43.) The defendants filed their own set of objections to the R&R on August 23, 2012. (Docket No. 36.)

## **ANALYSIS**

When a magistrate judge issues a report and recommendation regarding a dispositive

---

[5] In particular, the Magistrate Judge granted the defendants' motion to the extent it argued that the declarations of Keith Edmiston and Corey Singleton should not be considered in the course of ruling on the defendants' Motion to Dismiss. (Docket No. 31 at 5.) However, the Magistrate Judge denied the motion to strike the plaintiff's declaration. (*Id.*) Because neither party has filed specific objections to this ruling concerning a nondispositive pretrial matter, the court will direct the clerk to term the motion to strike. (*See infra* p. 11.)

pretrial matter, the district court must review *de novo* any portion of the Report and Recommendation to which a party specifically objects. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C); *see also United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001); *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993).

The plaintiff specifically objects to two items in the Magistrate Judge's R&R. First, he objects to the Magistrate Judge's statement in the R&R that the defendants' intentional failure to disclose material facts in the affidavit "caused the judicial officer to mistakenly find probable cause to issue a warrant." (Docket No. 43 at 5.) The plaintiff asserts that his Complaint does not allege that a judicial officer mistakenly issued the warrant. (*Id.* at 4.) Instead, he argues that his constitutional claims are solely directed at the defendants' decision to omit material information from the affidavit that led to his arrest and detention. (*Id.*) The plaintiff's second objection to the R&R is that the Magistrate Judge erroneously concluded that the defendants were entitled to quasi-judicial immunity. (*Id.* at 6-9.) For their part, the defendants "object" to the R&R in so far as they urge the court to review their entitlement to qualified immunity in the event that the court sustains the plaintiff's objections to the Magistrate Judge's determination of the quasi-judicial immunity issue. (Docket No. 36 at 1.) The court will address each of these specific objections in turn.

It appears to the court that the plaintiff's first objection is, in essence, a point of clarification concerning the contours of his claim. Indeed, as they note in their response to the plaintiff's objections, the question of whether the warrant was mistakenly issued by the General Sessions judge is irrelevant to determining whether the defendants are entitled to quasi-judicial

immunity.  (*See* Docket No. 44 at 2.)  Accordingly, the court will turn to the plaintiff's second objection addressing the Magistrate Judge's conclusion that the defendants were entitled to such immunity.

The issue of whether a defendant is entitled to immunity in a suit brought under 42 U.S.C. § 1983 is a question of federal law.  *See Martinez v. California*, 444 U.S. 277, 284 n. 8 (1980).  It is well settled that "judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of any jurisdiction."  *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir 1994) (internal quotation marks and citations omitted).  In addition, this immunity has been extended to non-judicial officers performing "quasi-judicial" duties.  *Id.*  "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune."  *Id.*  A functional approach is applied by courts when determining whether a particular person is entitled to quasi-judicial immunity.  *Id.*  Under this approach, a court examines the nature of the function performed, rather than the identity of the person who performed it.  *Id.*

Having reviewed the Magistrate Judge's analysis of the quasi-judicial immunity issue, the court finds that the plaintiff's second objection is without merit.  In reaching his decision on this issue, the Magistrate Judge relied on the Sixth Circuit's decision in *Loggins v. Franklin Cnty.*, 218 F.App'x 466 (6th Cir. 2007).  In *Loggins*, the plaintiff was placed on probation by a municipal court judge after being convicted of public indecency.  466 F.App'x at 468.  As a condition of his probation, the plaintiff was ordered by the judge not to engage in any offensive conduct or perform any similar acts.  *Id.*  However, over one year later, the plaintiff's probation

7

officer received a call from a university dean stating that the plaintiff was suspended from the university for violating the student code provision against lewd conduct. *Id.* Based on this information, the probation officer filed a Statement of Violations with the municipal court judge outlining the allegations and recommending that the plaintiff's probation be revoked if he was found to have violated the terms of his probation. *Id.* The judge then issued an arrest warrant and the plaintiff was arrested. *Id.* The plaintiff alleged that the probation officer included false information in the Statement of Violations filed with the judge. *Id.* at 476.

On appeal, the Sixth Circuit affirmed the district court's grant of the probation officer's Rule 12(b)(6) motion to dismiss based on the doctrine of quasi-judicial immunity. *Loggins*, 466 F.App'x at 477. The Court of Appeals stated that, in *Balas v. Leishman-Donaldson*, No. 91-4073, 1992 WL 217735 (6th Cir. Sept. 9, 1992), a prior panel had previously explained that a probation officer was entitled to quasi-judicial immunity when engaged in duties to ensure that a probationer was complying with the conditions of probation. *Id.* at 476. Specifically, the panel in *Balas* noted that:

> [W]hen a judge seeks to determine whether a defendant is complying with the terms of probation, the judge is performing a judicial function. To the extent court personnel were investigating whether [a defendant] was complying with the terms of his probation, they were performing a quasi-judicial function. To the extent [probation officers] were performing that function at the direction of the judge, they are entitled to quasi-judicial immunity. All of the same considerations that would apply to the judge apply to the probation officer.

1992 WL 217735, at *5. The Court of Appeals in *Loggins* agreed with this reasoning and found that all of the probation officer's actions there were related to ensuring that the plaintiff was complying with the conditions of his probation. 218 F.App'x at 476. It added that the probation

8

officer was working for the municipal court judge at all relevant times in the context of a judicial proceeding. *Id.*

In the R&R, the Magistrate Judge found that the instant case was analogous to *Loggins*. Indeed, he concluded that the actions at issue here had an even closer nexus to the judiciary because: (1) the defendants were acting pursuant to a court order in performing the plaintiff's drug and alcohol tests; and (2) bond release is more closely tied to the judiciary than probation release, because under the former, it is implied that a defendant will return to court to face pending charges. (Docket No. 31 at 6.) The Magistrate Judge then stated that:

> In effect, the Defendants' function was to adjudicate whether Plaintiff had violated the drug use portion of his bond restrictions. Since this function was ordered by a judge, Defendants were essentially "an arm" of that judge who was immune. The filing of the affidavit was part of this function, so Defendants are completely immune from these claims arising from the filing of that affidavit.

(*Id.* at 7) The court agrees with the conclusion reached by the Magistrate Judge.

In objecting to the R&R, the plaintiff fails to directly address the Sixth Circuit's decision in *Loggins* and, instead, places great emphasis on the fact that the Magistrate Judge determined that the defendants' function was, in essence, to "adjudicate" whether the plaintiff violated the drug use portion of his bond conditions. (*See* Docket No. 43 at 7-9.) This argument misses the mark. Indeed, while the defendants may not have technically "adjudicated" that the plaintiff violated the terms of his bond release, the Magistrate Judge nonetheless properly determined that they performed quasi-judicial functions entitling them to immunity. Though unpublished and non-binding, the court believes that *Loggins'* reasoning is particularly instructive here, given its factual setting. Again, relevant to the finding of quasi-judicial immunity in *Loggins* was the fact

9

that the defendant probation officer was: (1) performing actions that were related to ensuring that the plaintiff was complying with the terms of his probation; and (2) working for a judge in the context of a judicial proceeding at all relevant times. *Loggins*, 218 F.App'x at 476. Similarly, the defendants' actions here: (1) were related to ensuring that the plaintiff was complying with the terms of his bond release; and (2) were undertaken at the direction of a judge via court order. The Magistrate Judge thus correctly concluded that the defendants were essentially "an arm" of the General Sessions judge and, accordingly, were entitled to quasi-judicial immunity.

Having concluded that the Magistrate Judge properly determined that the defendants were entitled to quasi-judicial immunity, the court need not analyze the defendants' objection concerning the applicability of qualified immunity.[6] Accordingly, in light of the foregoing, the Magistrate Judge's August 7, 2012 Report and Recommendation that the defendants' Motion to

---

[6] Nevertheless, having reviewed the factual allegations of the plaintiff's Complaint, it appears that the defendants would also be entitled to qualified immunity. Again, the plaintiff alleges that the defendants violated his Fourth Amendment rights by intentionally or recklessly omitting the following facts in the affidavit submitted to the General Sessions judge to create an impression that the plaintiff used marijuana while on bond: (1) the plaintiff's April 26, 2011 positive drug test result for marijuana; (2) his May 4, 2011 positive drug test result for opiates; (3) his use of prescription cough medicine containing codeine to treat his pneumonia; and (4) his sudden weight loss. (Docket No. 1 at 6-7; Docket No. 43 at 13.) However, even assuming that both defendants acted intentionally or recklessly in omitting these facts from the affidavit, the court, construing the factual allegations in the light most favorable to the plaintiff, does not believe that the omitted information was material to a finding of probable cause. *See Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) (stating that, "[t]o overcome an officer's entitlement to qualified immunity" for making false statements or omissions in a warrant application, a plaintiff must establish: (1) a substantial showing that the officer acted intentionally or recklessly in making the false statements or omissions; and (2) that the false or omitted information was material to the probable cause determination). That is to say that, given the circumstances of this case, where the affidavit prepared by defendant Connell accurately stated that the plaintiff tested positive for the presence of marijuana on May 4, 2011, the court does not believe that a judge with possession of the omitted information would have refused to issue the arrest warrant. *See Vakilian*, 335 F.3d at 517.

10

Dismiss Based, in Part, on Qualified Immunity be granted (Docket No. 31) is **ACCEPTED**, and this action is **DISMISSED**. Moreover, as previously mentioned, the Magistrate Judge granted the defendants' Motion to Strike in part and denied it in part. Because neither party filed specific objections to this ruling concerning a nondispositive pretrial matter, the clerk is **ORDERED** to term the Motion to Strike (Docket No. 28).

It is so Ordered.

Enter this 13th day of February 2013.

_____
ALETA A. TRAUGER
United States District Judge